**SO ORDERED.**

**SIGNED this 29th day of August, 2016.**



Janice Miller Karlin
United States Chief Bankruptcy Judge

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In re: | Case No. 15-40351 |
| Jennifer Marie Kennedy, | Chapter 13 |
| Debtor. | |

**Memorandum Opinion and Order Overruling Debtor's Objection to the Proof of Claim of Creditor Navient Solutions, Inc.**

Admittedly, a $22,400 charge for collection costs on a $101,000 student loan debt is a breathtaking amount of money, especially for someone who finds herself in bankruptcy. No doubt a 22.5% collection cost rate is high. Recognizing this, Chapter 13 Debtor Jennifer Kennedy objects to the proof of claim of Creditor Navient Solutions, Inc. ("Navient"), arguing that the collection costs included in its proof of claim are not reasonable as required by the promissory note supporting that claim. Debtor asks that the collection costs be disallowed, and that Navient's claim be allowed only for the principal and interest owed.

Because, however, this Court agrees with the reasoning of the Court of Appeals for the Seventh Circuit in *Black v. Educational Credit Management Corp.*,[1] and concludes that the Department of Education's regulations on collection costs are entitled to deference—and that Navient's collection costs are reasonable in light of those regulations—the Court overrules Debtor's objection to Navient's claim. If change is to come to the Department of Education's collection policies, then it will have to come from changes Congress makes to the governing statute, and the Department of Education then makes to its regulations. Alas, this Judge does not have the authority to make law, only interpret it.

I. **Background and Procedural History**

Debtor filed her Chapter 13 bankruptcy petition in April, 2015. In her petition, she listed, among other debt, $113,588 in unsecured debt she labeled as student loan or educational debt. Debtor's Chapter 13 plan—confirmed in September, 2015—proposes a pro rata payment of her student loan obligations with other general unsecured creditors.

On May 20, 2015, Navient timely filed a proof of claim on behalf of United Student Aid Funds for a total of $123,548.34.[2] This sum consists of outstanding principal of $97,500.15, interest of $3658.73, and unpaid collection costs totaling $22,389.43. The promissory note supporting the proof of claim states that if the

---

[1] 459 F.3d 796 (7th Cir. 2006).

[2] Debtor's Schedule F lists an undisputed student loan from USA Funds for an unknown amount.

borrower fails "to make any payments on this Note when due," the borrower "will also pay reasonable collection costs, including but not limited to attorney's fees, court costs, and other fees."

About five months after Navient filed its claim, Debtor filed an objection to it, arguing that the $22,389.43 in collection costs were not reasonable. Debtor argued the collection costs were not actually incurred and that the claim was never placed in active collections. For these reasons, Debtor requested this Court disallow all collection costs and instead allow only the principal and interest totaling $101,158.91. Navient responded that Debtor's objection to its claim should be overruled, as Debtor had not met her burden of proof to challenge the claim.

Navient relies on a collection cost rate of 22.5% of the principal and interest balance, which results in the total collection costs of $22,389.43. Navient does not keep records of actual collection costs incurred, and thus has not provided an itemized list of collections costs or fees actually incurred. Instead, it relies on 34 C.F.R. § 30.60 to provide the formula for calculating a percentage charge for collection costs. That regulation permits guaranty agencies to include expenses such as mailing costs, telephone costs, credit reporting agency costs, collection contractor fees, and servicing fees. Navient performs a recalculation twice a year to keep collection costs in proportion to outstanding principal and interest.[3] Navient asserts that the application of the formula to its internal portfolio is proprietary, however, and refused to disclose it to

---

[3] The collection cost percentage was adjusted in January, 2016, from 22.5% to 17.5%.

-3-

Debtor.[4]

A proceeding to determine the "allowance or disallowance of claims against the estate" is a core proceeding under 28 U.S.C. § 157(b)(2)(B), over which this Court may exercise subject matter jurisdiction.[5] No party has challenged this Court's jurisdiction, and the Court finds that both parties have consented thereto.[6]

**II.    Analysis**

    **A.    Burden of Proof; Application of Rule 3001**

The parties first dispute who has the burden of proof on Debtor's objection to claim. Under 11 U.S.C. § 502(b)(1), a claim is determined as of the date of filing the bankruptcy petition. Federal Rule of Bankruptcy Procedure 3001 then governs the filing of a proof of claim. Rule 3001(c) dictates the supporting information required for a claim, and under Rule 3001(c)(2)(A), in individual debtor cases, when "a claim includes interest, fees, expenses, or other charges incurred before the petition was filed, an itemized statement of the interest, fees, expenses, or charges shall be filed with the proof of claim." The "shall be filed" language indicates this information is required, not optional.[7]

---

[4] Neither party presented any discovery dispute to the Court for resolution.

[5] 28 U.S.C. § 157(b)(1) and § 1334(b).

[6] *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1948–49 (2015) (permitting bankruptcy courts to decide claims submitted to them by consent of the parties, be it implied or express).

[7] *See, e.g.*, *Jewell v. United States*, 749 F.3d 1295, 1298–99 (10th Cir. 2014) (noting "the age-old precept that 'shall' means 'shall'" and indicates a mandatory duty).

-4-

This mandatory requirement is enforced by subdivision (D) of Rule 3001(c)(2), which states that if the claimant "fails to provide any information required by this subdivision," a court may:

> (i) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or
>
> (ii) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

Compliance is further encouraged by Rule 3001(f), which states that "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."

As an initial matter, the parties dispute Navient's compliance with Rule 3001, and, as a result, who carries the burden of proof here. Debtor argues that Navient did not comply with Rule 3001(c)(2)(A)'s requirement to file with its proof of claim "an itemized statement of the interest, fees, expenses, or charges." As a result, Debtor claims Navient is not entitled to Rule 3001(f)'s presumption of validity, and also argues she is entitled to attorney's fees under Rule 3001(c)(2)(D)(ii). Navient responds that because it supported its claim with a breakdown of the principal, interest, and collection costs, it has complied with the requirements of Rule 3001(c)(2)(A), and no further itemization of collection costs is required by that Rule.

Subdivision (c)(2)(A) was added to Rule 3001 in December 2011, and the Committee Notes for that amendment state that "[w]hen the holder of a claim seeks to recover—in addition to the principal amount of a debt—interest, fees, expenses, or

-5-

other charges, the proof of claim must be accompanied by a statement itemizing these additional amounts <u>with sufficient specificity to make clear the basis for the claimed amount</u>." (Emphasis added.) The purpose of the amendment, therefore, seems to be that claims be itemized with sufficient specificity for a debtor to understand the basis for the amount owed.

Debtor relies on a 2009 Tenth Circuit case (before Rule 3001 was amended), *Caplan v. B-Line LLC (In re Kirkland)*,[8] for her position that the presumption of validity under Rule 3001(f) should not apply to Navient's claim because of its alleged failures under Rule 3001(c)(2)(A). In *Kirkland,* the trustee objected to a proof of claim solely based on the creditor's failure to attach any supporting documentation for the claim.[9] Rule 3001, at that time, simply required creditors to attach supporting documents (such as promissory notes, etc.) to a claim, and Rule 3001(f), as now, gave prima facie evidence of the validity of the claim if the claim was so filed.[10] That creditor, however, "failed to produce a single document to support its proof of claim," and, at the evidentiary hearing on the claim's validity, failed to produce any evidence of the claim's validity.[11] Ultimately, the Tenth Circuit therefore affirmed the bankruptcy court's order disallowing the creditor's claim.[12]

---

[8] 572 F.3d 838 (10th Cir. 2009).

[9] *Id.* at 840.

[10] *Id.*

[11] *Id*

[12] *Id.* at 841.

Obviously, not only are the facts of *Kirkland* quite different from those in this case—there, the creditor did not provide *any* documentation at all—but Rule 3001 has also been substantially revised since *Kirkland* was decided. As noted by a fellow Bankruptcy Court decision, "[t]o the extent that *Kirkland*'s holding is inconsistent with language added to Rule 3001 since *Kirkland* was decided, the Court believes it must rely on the revised Rule 3001."[13]

The current proof of claim form (Official Form 10) requires that claimants check a box if their claim "includes interest or other charges in additional to the principal amount of the claim." If it does, claimants are then instructed to attach an "itemized statement of interest or charges." In support of its proof of claim, Navient attached the promissory note, a borrower "summary sheet" listing types of loans and their status, and then a print out of the loan payoff sheet for Debtor's loans, listing the principal outstanding ($97,500.15), the unpaid interest accrued ($3658.76), the unpaid collection costs ($22,389.43), the unpaid other charges ($0.00), and the total payoff ($123,548.34).

Due to the relative recency of the addition of subsections (c)(2)(A) to Rule 3001, there are not many cases discussing its application. And obviously, the cases discussing Rule 3001(c)(2)(A) are also highly fact dependent, just like *Kirkland*. For example, in *In re Jimenez*,[14] the bankruptcy court found noncompliance with Rule 3001(c)(2)(A) when the creditor's proof of claim lumped appraisal costs, title fees, public trustee fees,

---

[13] *In re Reynolds*, 470 B.R. 138, 143 (Bankr. D. Colo. 2012).

[14] 487 B.R. 543 (Bankr. D. Colo. 2013).

and filing fees into one category called attorney's fees, rather than itemizing those fees into separate categories in its attachment to the proof of claim.[15] As a result, the bankruptcy court refused to give Rule 3001(f) evidentiary effect to the claim and required the creditor to bear "the full burden of proof to support its [c]laim."[16]

On the other end of the spectrum, however, is the case of *White v. McDermott (In re White)*.[17] In *White*, the district court affirmed the decision of the bankruptcy court, concluding that an itemization of each payment made against a debt prior to the claim being filed was not required by Rule 3001(c)(2)(A), because "Rule 3001 does not require such exactitude."[18] And a very recent bankruptcy court case, *In re Wyly*,[19] found compliance with Rule 3001(c)(2)(A) despite the fact supporting documents to an IRS proof of claim itemized interest but not penalties. This holding was based on the Court's conclusion that debtors were given "a great deal of information" regarding the interest and penalties asserted in the proofs of claim via presentations to the debtors and regular communications with debtors' counsel.[20]

Obviously, to ensure compliance with the intent of Rule 3001, providing more information is always the better choice. But the Court does not find here that Navient

---

[15] *Id.* at 545–46.

[16] *Id.* at 546.

[17] 535 B.R. 749 (E.D. Mich. 2015).

[18] *Id.* at 758.

[19] 552 B.R. 338 (Bankr. N.D. Tex. 2016).

[20] *Id.* at 377.

failed under Rule 3001(c)(2)(A) to give enough information such that Debtor could not "make clear the basis for the claimed amount." Navient broke down its total claim into principal, interest, charges, and collection costs, and gave the subtotal for each category. From this information, Debtor was able to determine what portion of the claim to object to, and how to frame her objection. As a result, the Court chooses not to exercise its discretion to impose a remedy under Rule 3001(c)(2)(D),[21] and concludes that Navient's proof of claim was filed in accordance with Rule 3001, thereby entitling Navient to the presumption of prima facie evidence of the validity and amount of its claim.

As a result, the "standard" burden shifting framework applies. The properly filed proof of claim "constitutes prima facie evidence of the validity and amount of the claim" and Debtor, as the objecting party, carries "the burden of going forward with evidence supporting the objection."[22] "Once the objecting party has reached this threshold, the creditor [e.g., Navient] has the ultimate burden of persuasion as to the validity and amount of the claim."[23] As a result, because of the particular circumstances surrounding this case and the legal nature of the substantive argument being made

---

[21] *Howes v. Wells Fargo Bank, N.A.*, No. ELH-14-2814, 2015 WL 5836924, at *41 (D. Md. Sept. 30, 2015) (calling the remedies under Rule 3001(c)(2)(D) "permissive" and "discretionary" and concluding that the failure to include all information required by Rule 3001 could be remedied by allowing an amendment to that proof of claim, or a determination that "the failure was substantially justified or is harmless").

[22] *In re Picacho Hills Util. Co., Inc.*, 515 B.R. 820, 824 (Bankr. D.N.M. 2014) (internal quotations and alterations omitted).

[23] *Id.*

here,[24] this burden of proof analysis may have been purely academic. Nonetheless, we soldier forth with these standards in mind.

### B. Collection Costs on Student Loan Debts---What is Reasonable?

Debtor's substantive attack on Navient's proof of claim unfolds in two parts. First, Debtor attacks the regulation governing collection costs on student loans, claiming that the regulation does not provide for allowance of the collection costs on the basis Navient uses to calculate those costs. Debtor then argues that Navient has not shown, and cannot show, that the collection costs charged in this case are reasonable.

Federal statutes govern the assessment of costs and other charges with respect to borrowers who have defaulted on student loans. Section 1091a(b)(1) of title 20 states: "Notwithstanding any provision of State law to the contrary–– (1) a borrower who has defaulted on a loan made under this subchapter . . . shall be required to pay, in addition to other charges specified in this subchapter . . . reasonable collection costs." The statute does not, however, define "reasonable collection costs."

Federal regulations step in to fill this void. Regulations from the Department of Education governing administration of Federal Family Education Loan Programs by guaranty agencies state the "fiscal, administrative, and enforcement requirements" for

---

[24] *See, e.g.*, *Wilson v. Broadband Wireless Int'l Corp. (In re Broadband Wireless Int'l Corp)*, 295 B.R. 140, 145 (10th Cir. BAP 2003) (noting that generally, with claim objections, "the objecting party has the burden of going forward with evidence supporting the objection" and the "evidence must be of probative force equal to that of the allegations contained in the proof of claim," but that "an objection raising only legal issues is sufficient" to meet this standard, so the claimant must then carry its "ultimate burden of persuasion as to the validity and amount of the claim").

-10-

those agencies. Section 682.410(b)(2) of title 34 specifies that guaranty agencies "shall charge a borrower an amount equal to reasonable costs incurred by the agency in collecting a loan." The section further states that collection costs "may include, but are not limited to, all attorney's fees, collection agency charges, and court costs." And regarding computation of those "reasonable costs incurred," the regulation states that "the amount charged a borrower must equal the lesser of– – (i) The amount the same borrower would be charged for the cost of collection under the formula in 34 CFR 30.60; or (ii) The amount the same borrower would be charged for the cost of collection if the loan was held by the U.S. Department of Education." According to the Federal Register, the "collection rate currently assessed by the Department [of Education] is 25 percent."[25]

Only one Circuit Court of Appeals—the Seventh Circuit—has addressed the collection costs included in a proof of claim by a student loan guarantor, and the above regulations. In *Black v. Educational Credit Management Corp.*,[26] a guarantor filed a proof of claim in the debtor's Chapter 13 bankruptcy case for $9108, which consisted of $7714.88 in principal and interest and $1393.13 in collection costs.[27] The collection costs amounted to "approximately 18.06% of the $7718.88 total of the principal and

---

[25] Federal Family Education Loan Program, 61 Fed. Reg. 47398, 47398 (Sept. 6, 1996). This comment, in an unrelated notice of proposed rulemaking, is the most recent commentary the Court could find on the current Department of Education collection rate.

[26] 459 F.3d 796 (7th Cir. 2006).

[27] *Id.* at 798.

-11-

interest" owed by the debtor.[28] The guarantor in *Black*, like Navient here, relied on the use of the "flat 'make whole' rate, in lieu of actual collection costs in the particular case."[29] And, like here, the objection in *Black* was that "the assessment of collection costs calculated as a flat-rate percentage of [the debtor's] loan balance, as opposed to the actual costs [the guaranty agency] incurred while attempting to collect [the debtor's] loan, was unreasonable and should not be allowed by the bankruptcy court."[30]

The Seventh Circuit concluded that, regardless of whether it gave *Chevron* or *Skidmore* deference to the implementing regulations,[31] the Department of Education policy permitting "guaranty agencies to charge borrowers a flat-rate percentage for collection costs that takes into account the total costs associated with the agency's entire defaulted student loan portfolio, as opposed to requiring the agency to track the individual charges associated with the collection of a particular borrower's account"

---

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] In *Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 843–44 (1984), the Supreme Court concluded that, "[i]f Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." The Supreme Court has stated that *Chevron* deference "is warranted only when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *Gonzalez v. Oregon*, 546 U.S. 243, 255–56 (2006) (internal quotations from *United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001) are omitted). "Otherwise, the interpretation is entitled to respect only to the extent it has the power to persuade," according to the Supreme Court's decision in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). *Id.*

was well supported.[32]

Although the Seventh Circuit's decision is not binding on this Court, the Court finds its reasoning persuasive. In *Black*, the Seventh Circuit rejected the argument that it was "unfair" to allow guarantors to charge collection costs based on the agency's entire collection portfolio, as the guaranty agency did in that case and here, concluding that a policy of requiring borrowers to pay a flat rate percentage based on an agency's entire collection portfolio was "entirely consistent" with the Higher Education Act and its stated policy of requiring borrowers, not taxpayers, to be responsible for the cost of collecting student loans in default.[33] The Seventh Circuit stated:

> [The trustee objecting to the collection costs in the claim] urges that it is unfair to make borrowers who seek to repay their loan obligations responsible for the costs associated with the real deadbeats who never attempt to reconcile their accounts. Perhaps he is correct, as a matter of ultimate morality, but the real world does not operate this way. The price of merchandise in a store reflects the fact that some people shoplift; the rates associated with credit cards reflect the fact that some cardholders never pay their bills. In these and countless other instances, the many who pay end up absorbing the costs for the few who do not. [The trustee] points to no provision in the HEA that requires guarantors to charge each borrower in default only the collection costs that the agency spent in attempting to collect his or her individual debt.[34]

---

[32] *Black*, 459 F.3d at 800. Debtor argues that this approach is unreasonable, because she cannot know what exactly makes up the fee in her case. But as *Black* concludes, that result is permitted by the Department of Education. And the Department of Education's determination of what is reasonable is entitled to deference.

Debtor also claims that the regulatory scheme does not "permit or require a percentage fee to be utilized." But contrary to Debtor's position, the regulation does exactly that: § 682.410(b)(2) refers to both § 30.60 and the cost of collection computed by the Department of Education, both of which permit a percentage fee.

[33] *Id.* at 800–01.

[34] *Id.* at 800.

-13-

This Court agrees. It is reasonable that the Department of Education has implemented regulations that permit collections costs based on a flat rate percentage, rather than an item by item accounting of actual costs, given the high number of student loans in default.[35] And as another court has recognized: "Perhaps there is inherent unfairness to the currently used flat-rate method of calculating reasonable collection costs on a cost-averaging basis. That, however, is a public policy issue better considered legislatively rather than judicially."[36]

In addition to challenging the propriety of the regulatory scheme itself, Debtor also argues that the § 682.410(b)(2) regulation is unclear, because it gives a "formula" for computing reasonable collections cost ("an amount equal to reasonable costs incurred by the agency in collecting a loan" which "may include, but [is] not limited to, all attorney's fees, collection agency charges, and court costs") but then states that the amount "must equal" the lesser of the amount provided by the formula in 34 C.F.R. § 30.60 or the amount charged by the U.S. Department of Education. Debtor claims this

---

[35] Josh Mitchell, *More Than 40% of Student Loan Borrowers Aren't Making Payments*, The Wall Street Journal, Apr. 7, 2016 (stating that, according to Department of Education statistics, "[a]bout 1 in 6 borrowers" were in default on their student loan debt, to the tune of 3.6 million Americans, for a total of $56 billion.).

[36] *United States v. Larson*, No. 08-3438, 2010 WL 76433, at *3 (D. Minn. Jan. 5, 2010). The *Larson* court considered the reasonableness of collection costs when a student loan borrower, in opposition to a motion for summary judgment, argued that a genuine issue of material fact existed as to whether the collection costs assessed against him were reasonable. *Id.* at *2. The *Larson* court agreed with the reasoning of *Black* and upheld the the determination of costs in accordance with 20 U.S.C. § 1091a(b)(1) and its implementing regulation, 34 C.F.R. § 682.410(b)(2). *See also Educ. Credit Mgmt. Corp. v. Barnes*, 318 B.R. 482, 489–90 (S.D. Ind. 2004) (granting *Chevron* deference to the Department of Education's collection cost computation model).

language yields three different methods for determining collection costs, and cites *United States v. Arnold*[37] for the proposition that "the two formulas . . . render the preamble superfluous."[38]

But *Arnold* merely quotes the language of § 682.410(b)(2) and then states that the regulation "allows guaranty agencies to charge borrowers collections costs that take into account the total costs associated with the agency's entire defaulted student loan portfolio, including attorney's fees, provided that the total collection costs do not exceed the amount the same borrower would be charged for the cost of collection if the loan were held by the Department."[39] This is just a parroting of the regulation, and, as stated above, a reasonable approach.

In addition, this approach is exactly what Navient has stipulated to in the parties' stipulation of facts. Navient asserts that its collection cost rate of 22.5% is based on the formula provided in 34 C.F.R. § 30.60, which provides a mathematical computation for the calculation of collection costs, based on:

> (1) Salaries of employees performing Federal loan servicing and debt collection activities;
> (2) Telephone and mailing costs;
> (3) Costs for reporting debts to credit bureaus;
> (4) Costs for purchase of credit bureau reports;
> (5) Costs associated with computer operations and other costs associated with the maintenance of records;

---

[37] No. 12-80689-CIV-Hurley, 2013 U.S. Dist. LEXIS 186977 (S.D. Fla. May 17, 2013). The *Arnold* case does not appear on the Westlaw database, which is why it is cited differently than the other unpublished cases in this opinion.

[38] Doc. 72 at 9 n.26.

[39] *Arnold*, 2013 U.S. Dist. LEXIS 186977, at *7.

-15-

(6) Bank charges;
(7) Collection agency costs;
(8) Court costs and attorney fees; and
(9) Costs charged by other Governmental agencies.

And Navient's 22.5% fee is below the Department of Education's other limit on collection costs, which is that the collection costs charged be less that the Department of Education rate of 25%. Debtor claims that Navient is asking the Court to "trust" that its costs are reasonable.[40] But the regulations define what is reasonable, and Navient is assessing collection costs based on these regulations.

Navient also relies on several examples of other courts determining reasonable collection costs. For example, in *In re Schlehr*,[41] the Court analyzed § 1091a(b)(1) and its implementing regulation § 682.410(b)(2) and concluded that a collection costs percentage exceeding 20% was not exorbitant or unreasonable, noting the Department of Education cap of 25%. Likewise, in *United States v. Vilus*,[42] the court granted *Chevron* deference to the Department of Education's regulatory guidance on reasonable collection costs.[43] The court rejected the argument that a percentage fee was unreasonable, noting that a substantial number of defaulted loans will be uncollectible, and so a higher collection cost on the loans that are collectible is justified to reimburse

---

[40] Doc. 72 at 9–10.

[41] 290 B.R. 387 (Bankr. D. Mont. 2003).

[42] 419 F. Supp. 2d 293 (E.D.N.Y. 2005).

[43] *Id.* at 298.

-16-

the guaranty agency for its overall costs.[44] As noted in *Vilus*, the Department of Education collection procedures ask "what is reasonable from the perspective of the holder of the federally financed student loan obligation,"[45] not from a particular debtor's perspective.

Beyond challenging the regulatory scheme itself, Debtor also challenges the application of this scheme to her case. She argues that even if a percentage fee is utilized, the fee must still be based on actual costs, citing *United States v. Ratto*[46] for the proposition that the percentage fee must be tied to the actual costs of collection in her case.

In *Ratto*, on default judgment, the court denied a request for attorneys' fees as part of the collection costs on a student loan because a different regulation, 34 C.F.R. § 682.202(g)(1)(i), states that attorney's fees may be awarded only if provided for in the borrower's promissory note.[47] In that case, the creditor "failed to include any documentation or provision from the promissory note allowing for the collection of attorney's fees."[48] which is not the case here.

---

[44] *Id.* at 299–300.

[45] *Id.* at 298.

[46] No. 1:12-cv-00893, 2013 WL 4046353 (N.D.N.Y. Aug. 8, 2013).

[47] *Id.* at *2.

[48] *Id.* at *3. The court in *Ratto*, like many cases discussing reasonable collection costs on student loans, analyzed attorney's fees because of the particular posture of those cases: suits for judgment by the United State against an individual borrower. *Id.* at *1. In these cases, the United States enters into contingent fee agreements with a particular attorney for the pursuit of the judgment. *See, e.g.*, *Vilus*, 419 F. Supp. 2d at 298–99

-17-

The *Ratto* case also denied a request for the cost of service of process because the creditor "failed to provide substantiation" for such costs.[49] Here, Navient has provided substantiation for its collection costs: the percentage fee approved by the Department of Education regulations.

Another case cited by Debtor for its take on reasonableness is likewise distinguishable. In *Educational Credit Management Corp. v. Kirkland*,[50] the court concluded that collections costs were not reasonable under a regulation stating those costs should "not exceed that which would be incurred by a prudent person under the circumstances prevailing at the time the decision was made to incur those costs," because the guaranty agency failed to monitor and track payments, and so never should have incurred any collections costs to begin with.[51] Again, there is no such

---

(discussing contingent fee arrangements with the United States and student loan recovery). The *Vilus* court stated:
> By entering into a contingency-fee agreement to collect upon the numerous student loans it issues each year, the Government necessarily passes on more than the actual costs of litigating each individual debtor's case to the debtor. This is so because any private attorney entering into a contingency contract with the Government to collect these notes knows that a substantial portion of them will go uncollected. Not all debtors will pay. In negotiating his contract, an attorney will therefore require a higher contingency rate to compensate for the fact that not all of the cases he works on will result in remuneration. A debtor who does pay therefore pays attorneys fees at a higher rate than he would if all debtors paid their judgments, and higher than the amount he would pay if the Government hired attorneys at an hourly rate."

*Id.* at 299. Again, this contingent fee agreement scenario is inapposite from this case, but this explains why many of the cases upon which the parties rely discuss contingency fees.

[49] *Id.*

[50] 402 B.R. 177 (W.D. Va. 2009).

[51] *Id.* at 187–88.

allegation in this case.

Finally, Debtor also claims the promissory note supporting Navient's claim limits the collection cost percentage to 18.5%, citing language from the promissory note that collection costs "may not exceed 18.5 percent of the outstanding principal and interest on the loan at the time the holders certify the payoff amounts."[52] But the full text of that section states:

> I understand that if any collection costs are owed on the loans selected for consolidation, these costs may be added to the principal balance of the Federal Consolidation Loan and, in the case of Federal Stafford, SLS, PLUS, or Consolidation loans in default and held by a guaranty agency, may not exceed 18.5 percent of the outstanding principal and interest on the loan at the time the holders certify the payoff amounts.[53]

This provision indicates that the loans that were themselves consolidated into the consolidation loans currently held by Navient were limited to a collection cost rate of 18.5%. The collection cost rate on the consolidation loan is a different matter, and is limited only by the "reasonableness" language discussed here.

### III. Conclusion

Navient has carried its "ultimate burden of persuasion as to the validity and amount of [its] claim."[54] As a result, the Court overrules Debtor's objection to Navient's proof of claim,[55] and denies Debtor's request for an award of attorney's fees.

---

[52] Doc. 72 at 7-88, citing Claim No. 8, page 8, para. 35.A.

[53] Claim No. 8, page 8, para. 35.A.

[54] *In re Picacho Hills Util. Co., Inc.*, 515 B.R. 820, 824 (Bankr. D.N.M. 2014).

[55] Doc. 43.

Case 15-40351    Doc# 78    Filed 03/07/17    Page 19 of 20

**It is so Ordered**.

# # #